**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:11-cv-02875-STA-tmp |
| | ) | Cr. No. 2:09-cr-20440-STA-1 |
| CLIFTON BUTLER, | ) | |
|     Defendant. | ) | |

**ORDER DENYING AND DISMISSING MOTION UNDER 28 U.S.C. § 2255**
**ORDER DENYING CERTIFICATE OF APPEALABILITY**
**AND**
**ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH**

On October 4, 2011, Defendant Clifton Butler, Bureau of Prisons registration number 23441-076, an inmate at the Federal Correctional Institution in Memphis, Tennessee, filed a motion pursuant to 28 U.S.C. § 2255. (ECF No. 1.) On May 31, 2012, the Court directed the United States to file a response. (ECF No. 2.) On July 1, 2012, the United States filed a motion to release trial counsel from attorney-client privilege. (ECF No. 3.) On February 4, 2014, the Court entered an order granting the motion. (ECF No. 6.) On October 9, 2014, the United States filed a response. (ECF No. 10.)

On October 27, 2009, a federal grand jury indicted Butler in a two-count indictment charging him with possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g) (Count One) and possession of approximately 670 grams of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Two). (Cr. ECF Nos. 1-3.) On August

17, 2010, Defendant pled guilty to Count One of the indictment pursuant to a written plea agreement. (Cr. ECF Nos.23-25.) The plea agreement provided:

<u>**PLEA AGREEMENT**</u>

**The full and complete plea is as follows:**

The following constitutes the Plea Agreement reached between the United States, represented by Edward L. Stanton, III, United States Attorney for the Western District of Tennessee, and R. Matthew Price, Assistant United States Attorney, and the defendant, CLIFTON BUTLER, represented by LORNA MCCLUSKY, defense counsel..

CLIFTON BUTLER agrees that he will enter a voluntary plea of guilty to count ONE of the indictment because he is in fact guilty.

The United States agrees to dismiss any remaining counts of the indictment against the defendant at the appropriate time.

Given the facts in the possession of the United States at the time of the writing of this agreement, the United States does not oppose the defendant receiving acceptance of responsibility credit pursuant to U.S.S.G. Section 3E1.1. CLIFTON BUTLER understands that if the United States receives information between the signing of this agreement and the time of the sentencing that the defendant has previously engaged in, or if he engages in the future, in conduct inconsistent with the acceptance of responsibility, including, but not limited to participation of any additional criminal activities between now and the time of sentencing, this position could change. Further, CLIFTON BUTLER understands that whether or not acceptance of responsibility credit pursuant to Section 3E1.1 is granted is a matter to be determined by the District Court. Failure of the District Court to grant acceptance of responsibility credit is not a basis for CLIFTON BUTLER to withdraw his guilty plea.

CLIFTON BUTLER understands that any statement made in the course of the plea colloquy may be used against him in any criminal prosecution. CLIFTON BUTLER knowingly, intelligently and voluntarily waives any objection based on Fed. R. Evid. 410

CLIFTON BUTLER agrees that this plea agreement constitutes the entire agreement between himself and the United States and that no threats have been made to induce him to plead guilty. By signing this document, CLIFTON BUTLER acknowledges that he has read this agreement, has discussed it with his attorney and understands it.

(Cr. ECF No. 24 at PageID 23-24.)

A presentence report ("PSR") was prepared recommending a base offense level of twenty four, pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2K2.1(a)(2), because the firearm was possessed subsequent to two prior felony controlled substance offenses. (Cr. ECF No. 41-1 at PageID 82.) The offense level was increased four levels pursuant to U.S.S.G. § 2K2.1(b)(4)(B) because the firearm had an obliterated serial number and increased an additional four levels pursuant to U.S.S.G. § 2K2.1(b)(6) because the firearm was possessed in connection with another felony offense (possession of marijuana with intent to sell) for an adjusted offense level of thirty-two. (*Id.* at PageID 82-83.) The Court granted the United States' motion that Defendant be awarded full credit for acceptance of responsibility for a total offense level of twenty-nine. (*Id.* at PageID 83.) Defendant's criminal history category was four, resulting in a guideline imprisonment range of 121 to 151 months in prison, however, the restricted range was 120 months. (*Id.* at PageID 84.) The United States recommended a sentence of 120 months. (*Id.* at PageID 91.) Defense counsel argued for a downward variance. (Cr. ECF No. 65 at 31-32.) The Court imposed a term of imprisonment of one hundred eight (108) months, to be followed by a three-year period of supervised release. (*Id.* at PageID 121, Cr. ECF Nos. 29, 34.)

Defendant filed a notice of appeal. (Cr. ECF No. 33.) The Court permitted trial counsel to withdraw from the appeal and appointed new appellate counsel. (Cr. ECF Nos. 36, 39.) After reviewing the record, appellate counsel filed a motion to voluntarily dismiss the appeal, pursuant to Fed. R. App. P. 42(b). The Sixth Circuit granted the motion. *United States v. Butler*, No. 10-6537 (6th Cir. Apr. 14, 2011). (Cr. ECF No. 45.)

In the motion under 28 U.S.C., § 2255, Defendant contends that counsel provided ineffective assistance. (ECF No. 1 at PageID 4-5.) Specifically, Defendant contends that (1) he

hired William Massey, not Lorna McClusky, to represent him and that McClusky coerced and pressured him into pleading guilty, (2) McClusky failed to challenge statements in the affidavit of arrest and to appeal the denial of bond, (3) McClusky did not arrange for him to view the firearm, and (4) McClusky failed to present evidence of his rehabilitation during the sentencing hearing. (*Id.*) The United States has responded that Defendant's motion is without merit. (ECF No. 10 at PageID 30.)

## I.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the

4

error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id*.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley*, 523 U.S. at 622.

"[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *see also DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (same).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules.

The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The

challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[1]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S.Ct. 2052.

*Richter*, 131 S. Ct. at 787-88; *see also id.* at 791-72 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

_____

[1]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 131 S. Ct. at 788.

The two-part test stated in *Strickland* applies to challenges to guilty pleas based on the ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *Padilla*, 559 U.S. at 372 ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

## II.     ANALYSIS

Issue One
Defendant hired William Massey, not Lorna McClusky
and McClusky coerced and pressured Defendant into pleading guilty

Defendant Butler alleges that he entered into the plea agreement with the United States because counsel advised him that the prosecutor planned to supersede his indictment and that action would result in a longer sentence.  (ECF No. 1 at PageID 5.)  He alleges that he "felt rushed, pressured, and coerced into pleading guilty."  (*Id.*)  The terms of Defendant's plea agreement are set forth above.  By signing the agreement, Defendant expressly acknowledged that, although he would receive a recommendation for a three-level reduction for acceptance of responsibility, any recommendations by the United States were not binding on the Court and should the Court not accept the recommendations he had no right to withdraw his plea.  (Cr. D.E. 24 at PageID 24.)  Additionally, the United States agreed to move for dismissal of the second count of the indictment.  (*Id.* at PaageID 23.)  The plea agreement explicitly stated that the "plea agreement constitutes the entire agreement between himself and the United States and no threats have been made to induce him to plead guilty."  (*Id.* at Page ID 24)

Defendant's change of plea hearing was originally scheduled for July 30, 2010.  (Cr. ECF No. 22.)  On July 30, Defendant asked for and received additional time to consider the plea agreement.  (*Id.*)  During the change of plea hearing on August 17, 2010, the following exchanges took place between the Court, Defendant, the AUSA, and defense counsel:

> The Court:  [I]f you want to talk to Ms. McClusky before you answer any of my questions, if there is anything you want to ask her before you respond, I'll allow you to do that, so, again, you let me know, okay?
>
> Defendant:  Yes, sir.
>
> . . .
>
> The Court:  Do you understand why you are here today?
>
> Defendant:  Yes, sir.

The Court:      Have you had an opportunity to discuss your case fully with your attorney?

Defendant:      Yes, sir.

The Court:      Let me be sure I'm clear about this. On my docket sheet we have Mr. Massey down, is that an old –

Ms. McClusky:      We work together in the same office, and our law firm represents him.

The Court:      But you've been the one that's actually spoken and then conferred with Mr. Butler?

Defendant:      Yes.

Ms. McClusky:      Yes.

The Court:      Mr. Butler, have you had an opportunity to discuss your case completely and fully with Ms. McCluskey?

Defendant:      Yes, sir.

The Court:      Has she been able to explain to your satisfaction what the facts of the case are, what the law would be that would apply to those facts, and what your options are about whether to plead guilty or not?

Defendant:      Yes, sir.

The Court:      Are you satisfied with Ms. McClusky's representation of you in this matter?

Defendant:      Yes, sir.

The Court:      Are you currently taking any kind of medication?

Defendant:      No, sir.

The Court:      Nothing at all?

Defendant:      No, sir.

The Court:      Have you had any type of medication or alcohol or anything of that nature within the last 48 hours?

Defendant:     No, sir.

The Court:     Have you ever been treated for any type of mental health issues or emotional issues or anything of that nature?

Defendant:     No, sir.

The Court:     Never at all?

Defendant:     No, sir.

The Court:     Mr. Butler, do you understand that under the laws of the United States you are entitled to a trial by jury on the charges contained in the indictment?

Defendant:     Yes, sir.

The Court:     Do you understand that at the trial, you would be presumed to be innocent, and the government would have to prove that you were guilty by competent evidence beyond a reasonable doubt?

Defendant:     Yes, sir.

The Court:     Do you understand that at the trial the government would have to put on witnesses here in the courtroom in your presence, and your attorney could cross-examine those witnesses?

Defendant:     Yes, sir.

The Court:     Do you also understand that your attorney could object to any evidence that the government offered or attempted to offer that she thought was improper or inappropriate, and you would have the right through her to offer evidence in your own behalf?

Defendant:     Yes, sir.

The Court:     Do you understand that at the trial, you would have the right to testify if you wanted to do so, but you could not be made to testify?

Defendant:     Yes, sir.

The Court:     Do you understand that if you plead guilty and I accept your plea, you'll be giving up your right to a trial and other rights that we've just gone over?

Defendant:     Yes, sir.

The Court:     Do you also understand that you will be giving up your right to appeal your conviction in this matter?

Ms. McClusky:     Well, Your Honor when you say that, I think he thinks that that's part of the plea agreement. Certainly I think I explained to him, if I could have a minute, he recently met someone in the jail who had a plea agreement with that right explicitly waived in the plea agreement, so that was one of the questions he had this morning to make sure that was not part of that. So I think the question has thrown him off, if I could just explain.

The Court:     Go ahead. If you want to speak to him, go ahead?

Ms. McClusky:     Yes, thank you. (Pause). Thank you, Your Honor.

The Court:     All right. Mr. Butler, let's go back and let me ask you that question again because I want to be sure you understand what I'm talking about, and I've given you an opportunity to talk to your attorney. The question I had asked you is: do you understand that you will also be giving up your right to appeal your conviction in this matter?

Defendant:     Yes, sir.

The Court:     Now, what we mean by that, I don't want to say something that might be contradictory or different than what your attorney's told you, but what I'm referring to is just the fact that you are pleading guilty, and to plead guilty you are going to have to admit that you committed the charge or committed the offense that's contained in Count 1 of the indictment. Do you understand that?

Defendant:     Yes, sir.

The Court:     And so if you stand here under oath today and tell me, yes, I did that, yes, I possessed a .357 Ruger revolver, if you tell me that under oath and you say, yes I did that, then unless I allow you to withdraw your plea, which happens very, very rarely, you can't come back later and say, well, no, I didn't do that

Defendant:     Yes, sir.

The Court:     Do you understand?

Defendant:     Yes, sir.

The Court:    All right.  Do you need to talk to your attorney anymore about that question?

Defendant:    No, sir.

The Court:    So your answer to the question is do you understand that you will be giving up your right to appeal your conviction in this matter is what?

Defendant:    Yes, sir.

The Court:    Okay.  Do you understand that there will not be a trial, and I will sentence you after considering a presentence report that will be prepared in your case?

Defendant:    Yes, sir.

The Court:    Mr. Butler, with everything we've gone over, is it still your desire to enter a plea of guilty to Count 1 of the indictment?

Defendant:    Yes, sir.

The Court:    Okay.  Let's see, Mr. Price, if you would, review the charge contained in Count 1.

Mr. Price:    Yes, your Honor.  The charge contained in Count 1 is that on or about September 19th, 2008 in the Western District of Tennessee, Mr. Butler had previously been convicted of a crime punishable by imprisonment for a term exceeding one year and knowingly possessed in and affecting interstate commerce a firearm, that is, a Ruger double action .357 revolver, which is in violation of Title 18 United States Code Section 922(g).  The penalty for Count 1, Your Honor, is not more than ten years of imprisonment, not more than a $250,000 fine or both, not more than a three-year period of supervised release as well as a special assessment of $100.  However, if Mr. Butler has three prior convictions for violent felonies or serious drug offenses, then the penalties increase to not less than 15 years imprisonment and not more than life imprisonment, a fine of not more than $250,000 or both, a term of supervised release of not more than five years together with a special assessment of $100 per Title 18 United States Code Section 3013(a).

The Court:    Mr. Butler, you've heard the attorney general describe the charge contained in Count 1 of the indictment, is that what you understood you were being charged with?

Defendant:     Yes, sir.

The Court:     And again, did you have an opportunity to discuss that charge fully and completely with Ms. McClusky?

Defendant:     Yes, sir.

The Court:     Now, Mr. Price mentioned something about the possible penalty range and this possible sentence that your charge could carry. I would imagine that Ms. McClusky went over with you her best estimate of what she thinks you might be looking at as far as a sentence in this matter; is that correct?

Defendant:     Yes, sir.

The Court:     I don't want you to go into anything that she told you, but do you understand that the sentence that you ultimately receive will be up to the court?

Defendant:     Yes, sir.

The Court:     And the court will base that on a presentence report that will be prepared that will have information about you and your background, your history, and that combined with what we call the advisory guidelines and any argument that are made by the attorneys and any argument that you might make, then from that the court will decide what sentence it believes is appropriate, do you understand?

Defendant:     Yes, sir.

The Court:     Okay. Mr. Haley, would you pass this back to him. Mr. Butler, I've passed back to you the plea agreement that's been presented to the court. I want to ask you to look at that and see if that's your signature that appears on the last page or the signature page?

Defendant:     Yes, sir, it is.

The Court:     When did you sign that?

Defendant:     Just a few minutes ago.

The Court:     This morning?

Defendant:     Yes, sir.

The Court:      Did you have an opportunity to discuss the terms and conditions contained in that plea agreement with Ms. McClusky before you signed it?

Defendant:      Yes, sir, I did.

The Court:      Are you satisfied that you understood what the terms and conditions were in the plea agreement before you signed it?

Defendant:      Yes, sir.

The Court:      Okay, Pass it back up.

Ms. McClusky:      Your Honor, if I may state we've also been provided a copy of the plea agreement quite some time ago. The only difference in this plea agreement and that plea agreement is that plea agreement has Mr. Stanton's name in it where as the one previously had Mr. Laurenzi's name in it.

The Court:      Okay. Mr. Price, would you go over the terms and conditions of the plea agreement?

. . .

The Court:      Mr. Butler, you've heard the attorney general describe the terms and conditions contained in the plea agreement that you signed. Are those the same terms and conditions that you understood were in the agreement before you signed it?

Defendant:      Yes, sir.

The Court:      Did you sign this agreement freely and voluntarily?

Defendant:      Yes, sir.

The Court:      Did you sign it because you wanted to?

Defendant:      Yes, sir.

The Court:      Now, there is again some mention in here about sentencing, and you do understand that the sentence that you will receive will be entirely up to the court, is that right?

Defendant:      Yes, sir.

The Court:     All right.  Okay, General, what evidence would the government have presented if the matter had proceeded to trial?

Mr. Price:     Your Honor, had this matter proceeded to trial, the government was prepared to offer the following proof; that on September 19th, 2008, approximately 6 p.m., members of the Memphis Police Department OCU Team 7 executed a search warrant at an address located at 777 David, which is here in Memphis, Tennessee.  An individual standing near the front door initially saw the police, started yelling "police" as the officers were approaching the residence.  And the individual inside the house, later identified as Mr. Butler, I think, initially attempted to flee but was detained at the front door by Detective Star Handley.  When officers entered the residence, they observed a clear plastic bag filled with a green leafy substance as well as larger plastic shopping bag filled with a green leafy substance.  Both of these bags were in plain view on a living room table.  The contents of these bags were tested.  They both tested positive for marijuana with THC content.  The marijuana in the small bags weighed approximately 29.2 grams while the marijuana in the larger bag weighed approximately 457.4 grams.  Six additional bags containing this green leafy substance were located in a storage compartment inside a scooter or on a scooter that was parked in the ditch.  The contents of these bags were examined, they tested positive for marijuana, and they weighed a total of 185.6 grams.  Officers also found two gray digital scales that both had marijuana residue on them.  Officers also found the firearm described in Count 1 of the indictment, and the serial number of this firearm was scratched off.  Detective Graves of the search team found two photos of Mr. Butler in the residence, and the testimony from Detective Graves would have been that the way that Mr. Butler was holding his fingers would be consistent with a Gangster Disciples gang sign.  The total weight of all the marijuana, Your Honor, described weighed 672 grams or thereabouts.  The firearm was examined by an expert with the ATF and was found to have traveled in interstate commerce prior to coming into Mr. Butler's possession.  A records check was done on Mr. Butler, and it was determined that prior to September 19th, 2008, that Mr. Butler was a previously convicted felon.  And finally, Your Honor, all the above occurred within the Western District of Tennessee.

The Court:     Mr. Butler, you've heard the attorney general describe the evidence that the government contends it would have presented if you case had gone to trial.  I want you to listen to my question carefully on this. Are the statements that he made about your possession of the .357 revolver, are those statements substantially true and correct?

Defendant:     Yes, sir.

The Court:     Did you on September the 19th of 2008, after having previously been convicted of a felony, knowingly possess a .357 Ruger double-action revolver?

Defendant:     Yes, sir.

The Court:     All right.  Then the court finds that there is a sufficient factual basis to support a conviction of Mr. Butler in this matter.  It appears to the court that he understands his rights and that he has willingly waived those rights.     Furthermore, he's indicated that he is satisfied with the representation of counsel in this matter, and so, Mr. Butler, I'm going to accept your plea of guilty to Count 1 of the indictment.  As I mentioned to you earlier, the next step will be the preparation of a presentence report. You'll be required to meet with the probation officer who is seated at the table over to my right.  They will obtain information from you about your background, your family, your education, your work history, any criminal history, if you have any.  From that a report will be prepared that will be presented to the court.  We will come back in about three months, and at that time Ms. McClusky will be given the opportunity to make any arguments she wants concerning your sentence.  The government will present its recommendation.  You'll be given a change to make any statements you would like to make and call any witnesses that you want to call.  And then from all that, I'll try to decide what sentence I think is appropriate for you in this case.  Do you understand?

Defendant:     Yes, sir.

The Court:     If you want Ms. McClusky to be present with you when you meet with the probation officer, that's fine.  You just need to let her know, and she can coordinate the meeting for you, okay?

Defendant:     Right.

The Court:     Anything else from the government?

Mr. Price:     No, Your Honor.

The Court:     Ms. McClusky?

Ms. McClusky:     If I could have just one quick moment.  (Pause.)  Your Honor, I appreciate the court being very careful and precise in its question regarding the possession of the weapon, however, for the record I will say that Mr. Butler, his position would be that he did not attempt to flee and that he did not give any gang signs.  And I know what wasn't – that you were very careful in your questioning as to the possession of the weapon,

but I wanted to make that clear on the record in case that comes up.  I
don't think it will, Mr. Price doesn't, but you never know.

The Court:      Okay.

Ms. McClusky:          Thank you, Judge.

The Court:      Anything else you want to add to the record?

Ms. McClusky:          No, Judge.

The Court:      All right, Mr. Haley, when are we coming back?

The Clerk:      November 17th at 1:30 p.m.

(Cr. ECF No. 41 at PageID 53-69.)

In evaluating the validity of Butler's collateral challenge to his guilty plea under § 2255,
the Court must determine that he knowingly, intelligently, and voluntarily entered his plea of
guilty.  Based on the plea colloquy and the applicable law, Butler consented to Ms. McClusky's
representation and knowingly, intelligently, and voluntarily entered a plea of guilty.  "The
longstanding test for determining the validity of a guilty plea is 'whether the plea represents a
voluntary and intelligent choice among the alternative courses of action open to the defendant.'"
*Hill v. Lockhart*, 474 U.S. at 569.  Defendant acknowledged in open court, under oath, that he
understood the consequences of his guilty plea.

The United States and the Court described the elements of the felon in possession charge.
Defendant responded that he was pleading guilty to that charge.  (Cr. ECF No. 41 at PageID 60,
67.)  Defendant testified that he had read and understood the plea agreement.  (*Id.* at 62-64.)
Defendant was advised of his right to proceed to trial and assert his alleged innocence.  (*Id.* at
57-59.)   By entering the guilty plea he received the benefit of a three-level reduction for
acceptance of responsibility, reducing his total offense level from twenty-eight to twenty-five

and dismissal of the second count of the indictment. (Cr. ECF No. 34, Cr. ECF No. 41-1 at PageID 83.) The resulting guideline range for the conviction was 121 to 151 months imprisonment and the restricted guideline range was 120 months imprisonment. (*Id.* at PageID 84.)

The fact that a defendant, at the time he enters his guilty plea, does not know the precise sentence he will receive does not mean that the plea was "unknowing." *United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990). A defendant's subjective hope of a lesser sentence is unavailing. "Courts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence." *United States v. Crusco*, 536 F.2d 21, 24 (3rd Cir. 1976). Butler was specifically advised in open court of the maximum penalty and the applicability of the sentencing guidelines. (Cr. ECF No. 41 at PageID 61, 68.) Butler indicated that he understood the Court's explanation. (*Id.*)

Although Defendant claims that his attorney was "ineffective" and that therefore his plea was not "voluntary", the Sixth Circuit Court of Appeals held in *Ramos v. Rogers*, 170 F.3d 560 (6th Cir. 1999) that "the trial court's proper plea colloquy cured any misunderstanding he may have had about the consequences of his guilty plea." *See also Baker v. United States*, 781 F.2d 85, 91 (6th Cir. 1986) (a "defendant's plea agreement consists of the terms revealed in open court"). "Entry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2004)(citing *United States v. Gwiazdzinski*, 141 F.3d 784, 788 (7th Cir. 1998)("[ t]he purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing."). A

defendant's "solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. 63, 74.

By voluntarily pleading guilty, Defendant admitted the factual basis for the prosecution's case against him. He cannot now "invalidate" his guilty plea by making a self-serving claim that his counsel was ineffective, particularly when the record shows he was fully and painstakingly informed in open court about the consequences of his plea and fully admitted that the United States' factual basis was true and correct.

There is simply no evidence in the record that suggests Defendant failed to consent to Attorney McClusky's representation, was unhappy with that representation, or that his guilty plea was involuntary. The record establishes that Defendant was aware of the consequences of changing his plea and that he agreed to plead guilty to receive the United States' recommendation for a reduction for acceptance of responsibility and dismissal of the second count of the indictment. He made no attempt to withdraw his plea at any point in the proceedings. Furthermore, Butler does not allege that he requested counsel to assist him in withdrawing his guilty plea. Defendant has failed to establish that he would have not pled guilty in this case had counsel taken any different action. He has not established any prejudice from counsel's performance. Issue One is DENIED.

## Issue Two
## Counsel's Failure to Challenge the Affidavit of Arrest and Denial of Bond

Defendant entered an unconditional guilty plea. His guilty plea has been determined to be knowing and voluntary by this Court. "Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) (quoting *United States v. Pickett*, 941 F.2d 411, 417 (6th Cir.

1991); *United States v. Bahhur*, 200 F.3d 917, 923 (6th Cir. 2000). When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 266 (1973) (challenge to selection of grand jury is waived); *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived). These pre-plea matters were waived by the entry of Defendant's unconditional plea. Issue Two is DENIED.

Issue Three
Counsel's Failure to Arrange for Defendant to View the Firearm

Defendant alleges that he asked to see the firearm because his offense level was enhanced because of the obliterated serial number. (ECF No. 1 at PageID 4.) Defendant alleges that he "asked [McClusky] to personally view that weapon on my behalf." (*Id.* at PageID 5.) To the extent that these allegations support a contention that counsel did not view the weapon to determine that the serial number was obliterated, such contention is belied by the record. Counsel requested and received permission to show Defendant a picture of the firearm contained on her cell phone. (Cr. ECF No. 41-1 at Page ID 75, 97.) Defendant expressly admitted to this Court that he possessed the .357 revolver after the conviction of a felony. (Cr. ECF No. 41 at PageID 67.) Defendant provides no fact or affidavit to rebut the fact of the obliterated serial number. That Defendant did not personally view the firearm after its confiscation fails to allege an error of constitutional magnitude and provides him with no basis for relief. Issue Three is DENIED.

Issue Four
Counsel's Failure to Present Evidence of Defendant's Rehabilitation at Sentencing

Defendant alleges that counsel failed to present his "letters of achievement that [he] received from the facility [where] he was being held, such as substance abuse" in court proceedings. (ECF No. 1 at PageID 4.) Defendant has also failed to support this allegation with affidavits or exhibits.

The record demonstrates that counsel provided documents for the Court's review at sentencing. (Cr. ECF No. 30, Cr. ECF No. 41-1 at PageID 84-86.) The Court recalls counsel's impassioned argument for a downward variance. (Cr. ECF No. 41-1 at Page ID 92-103.) The Court noted Defendant's extensive criminal history, but granted a downward variance and sentenced Defendant to 108 months in prison. Defendant's claim that his attorney's ineffective assistance under *Strickland* deprived him of a greater downward departure must fail for lack of a legal demonstration of prejudice.

There is no right whatsoever to a downward departure. A sentencing court's decision to grant that request is purely discretionary and specifically insulated by statute from judicial review. *See, e.g.*, *United States v. Dellinger*, 986 F.2d 1042, 1044 (6th Cir. 1993); *United States v. Davis*, 919 F.2d 1181, 1187 (6th Cir. 1990). Nor is there any appellate jurisdiction of a district court's discretionary decision regarding the extent of a downward departure. *United States v. Gregory*, 932 F.2d 1167, 1169 (6th Cir. 1991).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim based upon a guidelines issue, the movant must show that the lawyer's failure to pursue the issue actually affected the sentence. Here, "even if counsel's performance were deficient, [the defendant] has not established that he was prejudiced." *Kesman v. United States*, No. 95- 3594,

1996 WL 102418, *2 (6th Cir. Mar. 7, 1996). Butler cannot establish that the Court would have imposed a lesser sentence and cannot establish prejudice. He cannot show "that the result of the proceedings would have been different" and cannot establish the deficient performance prong of the ineffective assistance test. *Id.* (citing *Strickland*, 466 U.S. at 687). Accordingly, Defendant's argument that counsel failed to present mitigating factors supporting a downward departure is without merit. Issue Four is DENIED

## III.    CONCLUSION

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Defendant's conviction and sentence are valid and, therefore, his Motion to Vacate (ECF No. 1) is DENIED and DISMISSED. Judgment shall be entered for the United States.

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the movant has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2), (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F.

App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require a showing that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011).  Courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).

In this case, for the reasons previously stated, Defendant's claims lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ.  The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.  *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a).  *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED.  If Defendant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to

proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a) (4)-(5)).

　　　　**IT IS SO ORDERED,** this 5th day of January, 2015.

　　　　　　　　　　　　　**s/ S. Thomas Anderson**
　　　　　　　　　　　　　S. THOMAS ANDERSON
　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE